

# NUMBER 13-26-00266-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE INTEREST OF V.C., A CHILD

---

## ON APPEAL FROM THE 267TH DISTRICT COURT
## OF VICTORIA COUNTY, TEXAS

---

## MEMORANDUM OPINION

### Before Justices Peña, West, and Fonseca
### Memorandum Opinion by Justice West

The trial court terminated the parental rights of appellant P.G. (Mother), V.C.'s biological mother, under Subsections (b)(1)(C) and (b)(1)(F) of the involuntary termination statute.[1] *See* TEX. FAM. CODE § 161.001(b)(1)(C), (F). Mother asserts by two issues that

---

[1] We refer to the parties and child by their initials. *See* TEX. R. APP. P. 9.8(a), (b)(2); *see also* TEX. FAM. CODE § 109.002(d).

the evidence is legally and factually insufficient to support termination under each subsection.[2] We reverse and render.

## I. BACKGROUND

Appellee V.M.C. (Father) is the biological father of V.C, and appellee S.C. is Father's wife. Appellees initiated this suit, seeking termination of Mother's parental rights and S.C.'s adoption of V.C.

V.C. was born in December 2017. Mother was incarcerated for four years and released in March 2024.[3] Appellees filed their petition on May 14, 2024.

A bench trial took place in March 2026, wherein appellees submitted no evidence and proffered one witness, Father. He testified Mother gave V.C. to him when V.C. was about six months old because Mother "couldn't handle him anymore." According to Father, in a 2021 legal proceeding that occurred while Mother was incarcerated, V.C.'s maternal grandmother sought but was denied "possession or at least access rights" to V.C., and Father obtained an order requiring Mother to pay child support. Mother never paid. Father testified that the 2021 order also gave him the authority to allow Mother to have contact with V.C. as he saw fit.[4] Father stated Mother lived in a halfway house after her prison release. He acknowledged Mother reached out expressing her desire to see V.C. when she was released from prison, but he thought that was not in V.C.'s best

---

[2] Mother also asserts the evidence was insufficient for the trial court to find termination was in the best interest of V.C. *See* TEX. FAM. CODE § 161.001(b)(2). Because we dispose of this appeal on Mother's first two issues, we need not address the third. *See* TEX. R. APP. P. 47.1.

[3] The record provides that Mother was incarcerated for conspiracy related to a drug offense.

[4] An order admitted into evidence by Mother states that, after Mother is released from prison, she may access and possess V.C. "at times and locations agreed upon in advance by [Father] and under the direct supervision of any person(s) designated by [Father]."

2

interest. He testified V.C. does not even know that Mother or her family exists and that V.C. would have a lot of questions if he had to see them because "all he knows is his mom, you know, my wife [S.C.]." He testified V.C. would "more than likely" need counseling if he had to see Mother. Father stated Mother was just a "donor," and S.C. "is [V.C.'s] mother" and the person he refers to as "Mom." Father further testified that V.C. is a "great[] A and B student," that Father and S.C. attend V.C.'s school functions and help V.C. with his homework, and that S.C. carries V.C. on her employer's health insurance and takes V.C. to the doctor when needed. Father said that while Mother would ask to see V.C., she was only "worried about what she wants, not, you know, his well-being."

Mother testified that when V.C. was around six months old, she and Father split up. She denied leaving V.C. with Father but stated they operated under a co-parenting agreement after splitting up. She testified that while she was incarcerated, she "did send letters and . . . tr[ied] to call." She also testified her mother tried to keep "communication going" as well but was "blocked off" by appellees. After her prison release, she reached out to appellees regarding V.C. multiple times, but appellees blocked her from seeing V.C. She stated she was unable to provide any support while she was in prison. Appellees met her on one occasion after her release, but "the conversation was just about that they want me to sign my rights over." Mother acknowledged Father and S.C. had "done a wonderful job" taking care of V.C. and that V.C. had a "a good life." She also stated she was not interested in taking V.C. away from them but just "want[ed] a chance to be there." Mother stated she was "doing very good now" and had a job, a car, and was renting a place to live.

The trial court admitted into evidence text messages from Mother to Father and S.C. that go back to early April 2024. In several text messages to Father, Mother asked how V.C. was, how he liked school, pleaded for Father to communicate with her, and asked for pictures of V.C. There are no responses from Father. In several text messages to S.C., Mother asked how V.C. was, pleaded for communication and photos of V.C., asked S.C. to give V.C. a hug and kiss from her, asked S.C. to tell V.C. she loves him, and thanked S.C. for her care of V.C. She also explained "how hurtful" it is that she cannot see or talk to V.C., that she is shut out of his life, and that appellees "are not open to letting [her] see him or be a[ ]part of his life." S.C. responded by stating that is out of her control, and she will not do anything to make Father upset with her. In one text, S.C. acknowledged that she has saved all the letters and drawings that Mother has sent to V.C.

The trial court terminated Mother's parental rights as discussed above, and this appeal ensued.

## II.     STANDARD OF REVIEW & APPLICABLE LAW

"Because the natural right between a parent and his child is one of constitutional dimensions, *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985), termination proceedings must be strictly scrutinized." *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). In parental termination cases, our legal and factual sufficiency standards honor this elevated burden of proof while respecting the factfinder's role. *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018) (citing *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002)). "The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id*. "Evidence is legally sufficient if, viewing all the evidence in the light

4

most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631 (citing *In re J.F.C.*, 96 S.W.3d at 266).

Factual sufficiency, on the other hand, requires us to weigh disputed evidence contrary to the finding against all the evidence favoring the finding. *Id.* We "must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* (citing *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006)). Therefore, "[e]vidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id*. (citing *In re J.F.C.*, 96 S.W.3d at 266).

To terminate parental rights, a court must find two elements by clear and convincing evidence: (1) that the parent committed one of the statutory grounds for termination found in Section 161.001(b)(1) of the Family Code; and (2) that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b). Because of the fundamental rights at issue, due process requires that parental termination be supported by clear and convincing evidence. *In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014); *In re K.M.L.*, 443 S.W.3d at 112. Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *see also In re J.F.C.*, 96 S.W.3d at 264.

5

### III. SUBSECTION C

By her first issue, Mother argues the evidence is legally and factually insufficient to support termination under Subsection C. *See* TEX. FAM. CODE § 161.001(b)(1)(C).

Subsection C permits termination of parental rights on clear and convincing evidence that the parent "voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months." *Id.* Subsection C merely requires that the parent "make arrangements for the adequate support rather than personally support the children." *Holick*, 685 S.W.2d at 21. Subsection C is unsatisfied when a parent placed their child or consented to their child's placement with caregivers who can provide adequate support for the child. *A.C. v. M.B.*, No. 01-20-00294-CV, 2021 WL 3729106, at *5 (Tex. App.—Houston [1st Dist.] Aug. 24, 2021, no pet.) (mem. op.) (collecting cases).

Here, the evidence presented by appellees merely provides that Mother left V.C. with appellees. Both Father and Mother testified that V.C. was well supported in appellees' care. Thus, viewing the evidence in the light most favorable to the trial court's ruling, we conclude a reasonable factfinder could not form a firm belief or conviction that Subsection C was satisfied. *See In re A.C.*, 560 S.W.3d at 630; *A.C.*, 2021 WL 3729106, at *5.

We sustain Mother's first issue.

### IV. SUBSECTION F

By her second issue, Mother argues the evidence is legally and factually insufficient to support termination under Subsection F. *See* TEX. FAM. CODE § 161.001(b)(1)(F).

6

Subsection F permits termination of parental rights on clear and convincing evidence that the parent "failed to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition." *Id.* A party seeking termination under this provision must show that the parent, for a period of twelve consecutive months beginning no earlier than eighteen months before the petition was filed, had the ability to support the child but failed to do so. *In re J.G.S.*, 574 S.W.3d 101, 117 (Tex. App.—Houston [1st Dist.] 2019, pet. denied); *In re F.E.N.*, 542 S.W.3d 752, 765 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (providing that where the petition was filed on March 1, 2013, the twelve-month period must fall "between September 1, 2011 and March 1, 2013"). Here, the petition was filed on May 14, 2024; thus, the twelve-month period must fall between December 14, 2022, and May 14, 2024.

While Mother testified that she had a job, a car, and was renting a place to live at the time of trial in 2026, this evidence does not apply to the relevant statutory period. Instead, the evidence is undisputed that Mother was imprisoned for four years until her release in March 2024, and she lived in a halfway house after her release. Thus, appellees failed to present any evidence that Mother had the ability to provide support within the statutory period. *See In re J.G.S.*, 574 S.W.3d at 118 (holding Subsection (F) was unsatisfied where appellant was incarcerated during the statutory period, and there was no evidence of his access to funds during that time); *In re T.B.D.*, 223 S.W.3d 515, 518 (Tex. App.—Amarillo 2006, no pet.) (same).

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude a reasonable factfinder could not form a firm belief or conviction that Subsection

7

F was satisfied. *See In re A.C.*, 560 S.W.3d at 630; *In re J.G.S.*, 574 S.W.3d at 118; *In re T.B.D.*, 223 S.W.3d at 518.

We sustain Mother's second issue.

## V.    CONCLUSION

Because appellees failed to prove any statutory grounds for termination, *see* TEX. FAM. CODE § 161.001(b)(1), we reverse the trial court's judgment and render judgment denying appellees' petition to terminate Mother's parental rights. *See* TEX. R. APP. P. 43.3.

JON WEST
Justice

Delivered and filed on the
6th day of August, 2026.

8